# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 08-cv-4464 |
| ) | |
| MANGALICK ENTERPRISES, INC., ) | Judge Robert M. Dow, Jr. |
| d/b/a IAC INTERNATIONAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

The Indian Arts and Crafts Act of 1990, as amended by the Indian Arts and Crafts Enforcement Act of 2000 (25 U.S.C. § 305 *et seq.* (2000)) ("the Act"), authorizes an "Indian arts and craft organization[]" to file suit against "a person who, directly or indirectly, offers or displays for sale or sells a good * * * in a manner that falsely suggests it is Indian produced[ or] an Indian product * * *." 25 U.S.C. §§ 305e(a), (c)(1)(C). In addition to injunctive relief, a successful plaintiff is entitled to the greater of treble damages or statutory damages. 25 U.S.C. §§ 305e(a)(1)-(2). Punitive damages, costs, and attorney's fees also are recoverable. *Id.* § 305e(b).

Plaintiff, Native American Arts, Inc. ("NAA"), filed this lawsuit on August 7, 2008. NAA's complaint comprises a single count and names only Defendant, Mangalick Enterprises, Inc., d/b/a IAC International ("Mangalick"). According to the complaint, Mangalick is violating the Act by selling inauthentic Indian[1] goods in a manner that falsely suggests that they are authentic. Currently before the Court is Defendant's motion to dismiss [15], which seeks to

---

[1] Rather than "Native American," the statutory scheme at issue uses the term "Indian." The Court follows that convention.

curtail Plaintiff's lawsuit on a number of constitutional and procedural grounds. Pursuant to Federal Rule of Civil Procedure 24 and 28 U.S.C. § 2403(a), the Government intervened to defend the constitutionality of the Act. For the reasons set forth below, Defendant's motion is denied.

**I.     Background**[2]

NAA is an Indian arts and crafts organization within the meaning of the Act. (Compl. ¶ 3.) Mangalick's principal place of business is Minneapolis, Minnesota, although it advertises, markets, promotes, displays, and sells various goods in the Northern District of Illinois. (*Id.* ¶¶ 2, 4.) Those goods are sold over the Internet, in catalogs, and at trade shows. (*Id.* ¶¶ 8-10.) NAA, invoking the language of the Act, alleges that the manner in which these goods are sold "falsely suggests" that Mangalick's wares are "Indian produced, an Indian product, or the product of a particular Indian or particular Indian tribe or Indian arts and crafts organization resident within the United States." *Id.*; 25 U.S.C. § 305e(a). Among the specifically listed goods are Indian mandelas, dolls, and tomahawks. (Compl. ¶¶ 10-11.) These and other goods are made in a traditional Indian style, using Indian motifs and designs. While promoting the goods, Mangalick has described the goods as "Indian," without using qualifying language. (*Id.* ¶¶ 16-17.) The absence of qualifying language is important, because the Indian-style goods that Mangalick sells are *not* Indian produced, made by an Indian, or the product of an Indian arts and crafts organization within the meaning of the Act. (*Id.* ¶ 22.)

NAA alleges that Mangalick engaged in its unlawful conduct on June 3, 2008, in particular, and also that Mangalick has been violating the Act "for substantial periods of time,

---

[2] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

possibly since August 8, 2004." (See, *e.g.*, *id.* ¶ 8-11.) NAA contends that Mangalick's conduct has caused competitive injuries to NAA, which sells similar goods, including loss of sales and goodwill. Moreover, Mangalick's actions have driven down prices for Indian goods. (*Id.* ¶ 24.) NAA also alleges that it has suffered what it calls "advertising injury," which includes misappropriation of NAA's ideas. (*Id.* ¶¶ 25-28.)

## II. Analysis

Mangalick argues four bases for dismissal: (i) the Act violates the equal protection component of the Fifth Amendment's due process clause; (ii) NAA lacks standing to sue and thus the Court lacks subject matter jurisdiction; (iii) NAA failed to draft its complaint in accordance with Federal Rule of Civil Procedure 9(b); and (iv) NAA failed to state a claim upon which relief can be granted under Rule 12(b)(6).

### A. Defendant's Equal Protection Argument is Orthogonal to the Pertinent Legal Framework

Mangalick, citing the Supreme Court's decision in *Adarand Constructors, Inc. v. Pena* (515 U.S. 200 (1995)), argues that the Supreme Court "has expressed increasing skepticism of the constitutionality of race-conscious government action." (Def. Mem. at 4.) Mangalick is correct that recent decisions affirm the suspect nature of racial classifications. See also *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738, 2758 (2007) ("The principle that racial balancing is not permitted is one of substance, not semantics.").

The flaw in Mangalick's argument, however, is that it begs the critical question: Mangalick presupposes, contrary to settled precedent, that the favorable treatment accorded to Indians by the Act constitutes a *racial* preference. In *Morton v. Mancari*, the Supreme Court held that a hiring preference for Indians within the Bureau of Indian Affairs was not a racial preference. Rather, it was a political classification. 417 U.S. 535, 554 n.24 (1974). The Court

3

reasoned that because the preference "applie[d] only to members of 'federally recognized' tribes," it "operate[d] to exclude many individual who [were] racially to be classified as 'Indians.'" *Id*; see also *id.* at 554-55 (describing the "numerous occasions this Court specifically has upheld legislation that singles out Indians for particular and special treatment"). Similarly, the Indian Arts and Crafts Act, by its terms, applies only to state and federally recognized tribes and their members. See 25 U.S.C. §§ 305e(d)(2), (d)(3).

Since *Mancari*, the Court has reiterated that "the legislative judgment [of Congress] should not be disturbed as long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians." *Del. Tribal Bus. Comm. v. Weeks*, 430 U.S. 73, 85 (1977) (citation and alterations omitted) (upholding on rational basis review a distribution of funds to certain Indians that excluded non-recognized Indians); see also *Washington v. Confederated Bands & Tribes of Yakima Indian Nation*, 439 U.S. 463, 500-01 (1979). In short, the decisions in this realm "leave no doubt that federal legislation with respect to Indian tribes, although relating to Indians as such, is not based on impermissible racial classifications." *Am. Fed'n of Gov't Employees, AFL-CIO v. United States*, 330 F.3d 513, 520 (D.C. Cir. 2003). Although commentators have speculated about *Mancari*'s continued viability post-*Adarand* (see, *e.g.*, L. Scott Gould, *Mixing Bodies and Beliefs: The Predicament of Tribes*, 101 COLUM. L. REV. 702, 707-08 (2001)), it is the Supreme Court's prerogative alone to overrule its own precedent. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). The broad rule that Mangalick apparently proposes would require the Court to conclude that *Mancari* and its progeny are overruled. See also *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 480 (1976) (statutory preferences for Indians are "neither 'invidious' nor 'racial' in character").

Legislation that is subject to rational basis review enjoys a presumption of constitutionality. See, *e.g.*, *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) (describing rational basis review as "a paradigm of judicial restraint"). Mangalick has not pointed to a single authority in which a preference accorded to Indians failed to pass constitutional muster. Likewise, Mangalick has not argued why the numerous cases affording rational basis review to preferences involving Indians are wrong, or fail to hew to the (admittedly distinguishable) facts in *Mancari* and its progeny. In other words, Defendant has not presented the Court with any basis for determining that rational basis review is not appropriate, nor has it explained how the Act fails to survive under rational basis review.

The Court concludes that the Act withstands the highly deferential, rational basis standard. Congress enacted the Act to "(1) * * * protect[] Indian artists from unfair competition from counterfeiters and (2) protect[] consumers from unknowingly purchasing imitation products." *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 168 F. Supp. 2d 905, 914 (N.D. Ill. 2001). When Congress strengthened the Act in 2000, the stated purpose of the new legislation was "to improve the enforcement of the [Act] for the protection of economic and cultural integrity of authentic Indian arts and crafts * * *." S. Rep. No. 106-452, at 1 (2000). Congress had determined that the "growing influx of inauthentic Indian arts and crafts * * * [was] decimating one of the few forms of entrepreneurship and economic development on Indian reservations." *Id.* at 1-2. The Court concludes that the Act – which imposes penalties for, among other things, selling Indian-style goods in a manner that falsely suggests that the goods were Indian made – is rationally related to a legitimate government interest. See *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 216-217 (1987) (encouraging tribal economic

development is an "important federal interest[]"). Therefore, the Court denies Mangalick's motion to dismiss on the ground that the Act is unconstitutional.

### B. Plaintiff's Complaint Sufficiently Establishes Standing at this Stage of the Litigation

Mangalick next argues that NAA lacks standing, which would deprive the Court of subject matter jurisdiction. Standing doctrine is rooted in Article III of the United States Constitution, which provides the judiciary with jurisdiction over only "cases or controversies." *Davis v. F.E.C.*, 128 S. Ct. 2759, 2768 (2008). In refining precisely what fits within the case or controversy rubric, the Supreme Court teaches that a plaintiff must demonstrate injury, causation, and redressability:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the Plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly * * * trace[able] to the challenged action of the defendant * * *. Third, it must be likely * * * that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and citations omitted). Mangalick argues that NAA's complaint "recites general, vague and conclusory allegations that NAA has 'standing' and is 'involved in the distribution of authentic Indian arts and crafts,' that it is a 'competitor of Defendant,' and that it has suffered 'competitive injuries' as a result of Mangalick's alleged actions." (Def. Mem. at 10 (citations omitted).)

Mangalick's argument fails for two reasons. First, even as construed, Plaintiff has met its pleading burdens with respect to standing. "At the pleading stage, general factual allegations of injury resulting from Defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation marks and alterations omitted). Second, NAA's complaint is

6

hardly as hazy as Mangalick makes it out to be. The specific allegations that NAA includes are that it has lost sales, has seen the prices for its wares depressed, and has lost goodwill. (Compl. ¶ 24.) The complaint alleges that Mangalick caused these injuries (*id.* ¶ 24) and seeks damages and injunctive relief for those injuries (*id.* ¶¶ 32-34). On nearly identical facts, other courts in this district have rejected the arguments made by Mangalick.[3] See, *e.g.*, *Native Am. Arts, Inc. v. Peter Stone Co., U.S.A., Inc.*, 2009 WL 1181483, at * 2 (N.D. Ill. Apr. 30, 2009) ("at the motion to dismiss stage * * * the burden on the complaining party is no greater than that requires to give the defendant notice as to the crux of the case"); *Ho-Chunk ex rel. Native Am. Arts, Inc. v. Nature's Gifts, Inc.*, 1999 WL 169319, at *3 (N.D. Ill. 1999); *Native Am. Arts, Inc. v. J.C. Penney Co., Inc.*, 5 F. Supp. 2d 599, 602-03 (N.D. Ill. 1998).

For the same reasons, the Court rejects Mangalick's prudential standing arguments. Defendant's motion to dismiss for want of standing is denied.

### C. There is No Heightened Pleading Requirement under the Act

Mangalick argues that the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) should govern NAA's complaint and that NAA's complaint fails to meet that standard. The apparent rationale for the argument is that the statute requires a defendant to have acted in a manner that "falsely suggests" that the questionable goods are in fact authentic. At least one court in this district has ruled that Rule 9(b) applies to complaints that invoke the Act. See *Native Am. Arts, Inc. v. Earth Dweller, Ltd.*, 2001 WL 910394, at *2 (N.D. Ill. Aug. 10, 2001). Other courts have assumed that Rule 9(b) applies, ruling that the complaint in question met the heightened standard. See, *e.g.*, *Native Am. Arts, Inc. v. Vill. Originals, Inc.*, 25 F. Supp.

---

[3] Defendant argues that a case from the Central District of California supports its argument. It does not. In *Native Am. Arts, Inc. v. Specialty Merch. Corp.*, the district court concluded that if the plaintiff had included allegations that it was injured in the *complaint*, instead of only in its opposition, then the plaintiff would properly have alleged standing. See 451 F. Supp. 2d 1080, 1082 (C.D. Cal. 2006). In this case, NAA has included allegations of injury in its complaint, rendering *Specialty Merch. Corp.* inapposite.

2d 876, 879 (N.D. Ill. 1998); *Ho-Chunk*, 1999 WL 169319, at *5. The Court concludes that Mangalick's argument is based on a misunderstanding of what the Act and the Federal Rules of Civil Procedure require: Rule 8(a) governs the adequacy of Plaintiff's complaint. Therefore, the Court respectfully disagrees with the analysis offered in the *Earth Dweller* opinion. See 2001 WL 910394, at *2.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The purposes of the rule are to protect a defendant's reputation from harm, to minimize "strike suits" and "fishing expeditions," and to provide notice of the claim to the adverse party. *Vicom, Inc. v. Harbridge Merch. Svcs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (noting that some have questioned the rule's effectiveness). Another rationale is that in a case of fraud or mistake, a defendant needs a large amount of information about the plaintiff's claim in order to respond effectively, because "fraud and mistake embrace such a wide variety of potential conduct." 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1296, at 39 (3d ed. 2004).[4]

There is no reason, based on the text of Rule 9(b) or the Act's requisites, to demand a heightened pleading standard for cases brought under the Act. First and foremost, the Act does not premise liability on either fraud or mistake. Fraud requires that a defendant make a false

---

[4] The reasons for applying a heightened pleading standard to averments of mistake are not obvious. For that reason the Seventh Circuit has intimated that the heightened pleading requirement for mistake may be "a dead letter." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 667, 683 (7th Cir. 1992) (observing that the rationales for pleading fraud with particularity do not apply to allegations of mistake). Similarly, James Wm. Moore's treatise lacks an explanation for Rule 9(b)'s inclusion of allegations of mistake; the treatise merely notes that cases in this realm are "far less frequent * * * [than] averments of fraud," and cites the Seventh Circuit's puzzlement with the rule. 2 MOORE'S FEDERAL PRACTICE 3D § 9.03[2] (Matthew Bender 3d ed. 2004). And although there is no agreed upon rationale for the heightened mistake pleading standard, the application of the rule seems best suited to contract law, for example in an action for rescission. *Cf. First Hartford Corp. Pension Plan & Trust v. United States*, 42 Fed. Cl. 599, 616-17 (1998), aff'd in part and rev'd in part on other grounds, 194 F.3d 1279 (1999).

8

statement, intended to induce action, and known to be untrue (or which was made with reckless disregard for its veracity). In order to recover, a plaintiff must further show that she both reasonably and detrimentally relied on the defendant's statement. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 732 n.4 (7th Cir. 2008). And the term "mistake" comports with its ordinary meaning: it is an "error, misconception, or misunderstanding; an erroneous belief." BLACK'S LAW DICTIONARY 1022 (8th ed. 2004). "A well-pleaded claim grounded on mistake should include averments of what was intended, what was done, and how the mistake came to be made." WRIGHT & MILLER, *supra*, § 1299, at 264. The notion that the statute addresses itself to fraud or mistake simply misses the mark. The Act imposes liability where a person "offers or displays for sale or sells a good * * * in a *manner* that falsely suggests it is Indian produced, an Indian product, or the product of a particular * * * Indian arts and crafts organization, resident within the United States * * *." 25 U.S.C. § 305e(a) (emphasis added). It is not obvious to the Court how this language plausibly can be read to embody fraudulent or mistaken conduct. Rather the Act's language and legislative history reveal that the Act imposes strict liability for objectively determinable conduct. *Vill. Originals*, 25 F. Supp. 2d at 881-82.

Second, the purposes of Rule 9(b)'s heightened pleading standard would not be advanced by applying the standard to cases arising under the Act. The Court perceives no basis for concluding that a violation of the Indian Arts and Crafts Act carries with it stigma greater than that which is associated with any other non-fraud lawsuit. And because the language of the statute focuses on conduct rather than state of mind, there is little risk of "strike suits" or "fishing expeditions." Although the goal of notice would be served by a heightened standard, that goal is also furthered by compliance with Rule 8(a)'s requirements. *Cf. Heffernan v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006).

9

Mindful of the Supreme Court's guidance that "[s]pecific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts" (*Hill v. McDonough*, 547 U.S. 573, 582 (2006)), the Court concludes that Rule 8(a) – not Rule 9(b) – applies to complaints that arise under the Act. See also *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Therefore, the Court denies Defendant's motion to dismiss for want of particularity in NAA's complaint.

### D. Plaintiff has Stated a Legally Cognizable Claim under Rule 12(b)(6)

Mangalick's final argument is that NAA has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). Specifically, Mangalick argues that NAA's complaint "on its face with its Exhibits, actually demonstrates that Mangalick did not falsely suggest" that it was selling authentic Indian goods. (Def. Mem. at 15.)

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 127 S.Ct. at 1965, 1973 n.14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts

consistent with the allegations in the complaint." *Twombly*, 127 S.Ct. at 1969. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

The crux of Mangalick's argument appears to be that, because the complaint's exhibits do not show any "false suggestion" by Mangalick, NAA is not entitled to relief. Yet, all NAA has to do at the pleading stage is put Mangalick on notice of the claims against it – NAA need not actually prove its case in the complaint. Indeed, NAA's complaint is sufficiently detailed that it would have survived even if Rule 9(b) did apply, as the complaint includes the "who, what, when, and where" of Mangalick's alleged conduct. See *Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 782 (7th Cir. 1999). Not even Rule 9(b) requires fact pleading; the rule merely demands "slightly more * * * for notice." *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975), overruled on other grounds by *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385, 1387 (7th Cir. 1990); see also *Williams v. Sabin*, 884 F. Supp. 294, 297 (N.D. Ill. 1995). Plaintiff's complaint – which is detailed with respect to the factual circumstances that led to this lawsuit, contains thirty-four paragraphs, and spans fourteen pages – necessarily survives the more forgiving standards which in fact are applicable in this case.

Likewise, NAA has not pleaded itself out of Court by attaching exhibits, which depict what appear to be Indian or Indian-style goods that were sold by Mangalick. NAA's complaint includes multiple allegations that Mangalick acted "in a manner that falsely suggested" that it was selling authentic Indian goods – in catalogs, at trade shows, and on the Internet. (Compl. ¶¶ 8-10.) These allegations satisfy the liberal notice pleading standards of the Federal Rules of Civil Procedure.

### III.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss [15] is denied.

*[signature]*

Dated:  June 2, 2009

Robert M. Dow, Jr.
United States District Judge